Case 4:16-cv-01272   Document 46   Filed in TXSD on 09/16/16   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
September 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GEORGE MAY and LAURIE ANN MAY, §
§
Plaintiffs, §
§
v. §
§
NEW CENTURY MORTGAGE §
CORPORATION; DEUTSCHE BANK § CIVIL ACTION NO. H-16-1272
NATIONAL TRUST COMPANY, AS §
TRUSTEE FOR THE GSAA TRUST §
2004-NC1; THE GSAA TRUST §
2004-NC1; OCWEN LOAN SERVICING, §
LLC; and SELECT PORTFOLIO §
SERVICING, INC., §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

Defendant, Deutsche Bank National Trust Company, as Trustee for the GSAA Trust 2004-NC1, removed this action from the 125th District Court of Harris County, Texas, where it was pending under Cause No. 2016-21160, styled George May and Laurie Ann May v. New Century Mortgage Corporation, et al. Pending before the court is Plaintiffs' Motion to Remand (Docket Entry No. 22). For the reasons explained below, the motion to remand will be denied.

### I. Factual and Procedural Background

On April 4, 2016, plaintiffs, George and Laurie Ann May (the "Mays"), filed this action in state court against defendants New Century Mortgage Corporation ("New Century"), Deutsche Bank

National Trust Company, as trustee for the GSAA Trust 2004-NC1 ("Deutsche Bank" or "the Trustee"), and JP Morgan Chase Bank, N.A. ("Chase"), alleging defendants' lack of standing to foreclose as a real party in interest, in the alternative breach of contract and lack of contractual standing, and violations of the Texas Debt Collection Act.[1] Plaintiffs sought various damages and declaratory relief.[2] No specific amount or value was assigned to the Mays' request for damages.

On May 6, 2016, Deutsche Bank timely removed the action to this court based on diversity jurisdiction.[3] Specifically, Deutsche Bank states that (1) there is complete diversity between the parties because the Mays are citizens of Texas and the defendants are either citizens of California (Deutsche and New Century) or Ohio (Chase), and (2) the amount in controversy exceeds $75,000 because the value of the Mays' home, which is the object of their requests for declaratory relief, is $76,371.[4]

The Mays amended their complaint on June 24, 2016, adding as defendants the GSAA Trust 2004-NC1 (the "Trust"), Ocwen Loan

---

[1]Plaintiffs' Original Petition and Notice of Automatic Stay of Expedited Home Equity Foreclosure Sale Under Tex. R. Civ. P. 736.11(a) ("Petition"), Exhibit B.2 to Defendant's Notice of Removal, Docket Entry No. 1-3.

[2]Id. at 20-21.

[3]Defendant's Notice of Removal, Docket Entry No. 1, pp. 1-3.

[4]Id. at 3-5.

Servicing, LLC, and Select Portfolio Servicing, Inc.[5] Plaintiffs moved to remand the action on the same day, arguing that this court lacks subject-matter jurisdiction because (1) the amount in controversy does not exceed $75,000 and (2) defendants have not met their burden to show that the parties are diverse.[6] Defendants oppose the motion on both grounds, contending that the amount-in-controversy requirement is met and that the Trust is not a proper party to the action.

## II. Analysis

Federal courts have original jurisdiction over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed. See Manguno v. Prudential Property and Casualty Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441). If jurisdiction is based on diversity, an action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b)(2). Federal courts generally base decisions about subject-matter jurisdiction after removal on the plaintiffs' allegations as they existed at the time

---

[5]Plaintiffs' First Amended Complaint ("Amended Complaint"), Docket Entry No. 19, ¶¶ 4-6.

[6]Plaintiffs' Motion to Remand, Docket Entry No. 22, ¶¶ 3-4.

that the defendant removed the action. <u>Kidd v. Southwest Airlines, Co.</u>, 891 F.2d 540, 546 (5th Cir. 1990). Doubts about the propriety of removal are to be resolved in favor of remand. <u>Id.</u> Thus, the removing party bears the burden of showing that the court has jurisdiction by a preponderance of the evidence. <u>Id.</u>

A.  **The Amount in Controversy**

   1.  <u>Applicable Law</u>

"When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [the jurisdictional amount]." <u>De Aguilar v. Boeing Co.</u>, 11 F.3d 55, 58 (5th Cir. 1993), <u>cert. denied</u>, 116 S. Ct. 180 (1995). The Fifth Circuit has set forth two ways to satisfy this burden.

> First, jurisdiction will be proper if "it is facially apparent" from the plaintiffs' complaint that their "claims are likely above [$75,000]." . . . If the value of the claims is not apparent, then the defendants "may support federal jurisdiction by setting forth the facts — [either] in the removal petition [or] by affidavit — that support a finding of the requisite amount."

<u>Garcia v. Koch Oil Co. of Texas Inc.</u>, 351 F.3d 636, 639 (5th Cir. 2003) (quoting <u>Allen v. R&H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995)). If the removing party satisfies its burden using either of these two methods, the opposing party must establish to a legal certainty that the value of their claims is less than the $75,000 jurisdictional threshold in order to justify remand. <u>De Aguilar</u>, 47 F.3d at 1412.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advertising Comm'n, 97 S. Ct. 2434, 2443 (1977). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." Waller v. Professional Ins. Corp., 296 F.2d 545, 547-48 (5th Cir. 1961). A common method of establishing the value of real property is to look to a county appraisal district's assessment. Statin v. Deutsche Bank Nat. Trust Co., 599 F. App'x 545, 546-47 (5th Cir. 2014). Reasonable bases for valuing properties include "purchase price, market value, or outstanding principal and interest." Farkas v. GMAC Mortgage, L.L.C., 737 F.3d 338, 341 (5th Cir. 2013). This court considers market value to be the preferred method. See, e.g., Govea v. JPMorgan Chase Bank, N.A., Civil Action No. H-10-3482, 2010 WL 5140064, at *2-4 (S.D. Tex. Dec. 10, 2010).

2. Application

The amount in controversy is not facially apparent from the Mays' state-court Petition.[7] However, the Mays are seeking declaratory relief and quiet title to the property.[8] Thus, the amount in controversy is at least the value of the property that is

---

[7] See Petition, Exhibit B.2 to Notice of Removal, Docket Entry No. 1-3.

[8] Id. ¶ 60.

the object of the litigation. Neither party disputes that the most recent property assessment from the Harris County Appraisal District is a reasonable basis for determining the value of the property. In fact, each party points to the assessment in support of its position.[9] Plaintiffs urge the court to use the "appraised value" of $54,160.[10] Defendants contend that the "market value" of $76,371 is a more accurate estimate of the property's value because it represents the price the property would sell for on the open market while the artificially adjusted "appraised value" is specifically designed for tax purposes and allows for only limited adjustment.[11]

This court concludes that the market value is a more accurate estimate of the property value at the time of removal. See Govea, 2010 WL 5140064, at *2-4. Thus, the property assessment establishes by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, and the Mays have failed to demonstrate to a legal certainty that it does not.

**B. Diversity of Citizenship**

1. Applicable Law

The removing party also bears the burden of proving that the parties are completely diverse. Federal courts have jurisdiction

---

[9]Notice of Removal, Docket Entry No. 1, p. 5 ¶ 17; Plaintiffs' Motion to Remand, Docket Entry No. 22, p. 4 ¶ 8.

[10]Plaintiffs' Motion to Remand, Docket Entry No. 22, ¶ 3.

[11]Deutsche Bank's Response to Plaintiffs' Motion to Remand, Docket Entry No. 31, pp. 3-4.

over controversies between "Citizens of different States" by virtue of 28 U.S.C. § 1332(a)(1) and U.S. Const., Art. III, § 2. "A federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 100 S. Ct. 1779, 1781-82 (1980) (citations omitted).

"As early as 1808, [the United States Supreme Court] stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship." Id. at 1782 (citing Chappedelaine v. Dechenaux, 4 Cranch 306, 308, 2 L.Ed. 629). Although early cases held that only natural persons could be real parties to a controversy, artificial or legal entities such as corporations have since been deemed citizens. See, e.g., 28 U.S.C. § 1332(c). However, not all legal entities are so endowed; for example, "unincorporated associations remain mere collections of individuals." Navarro, 100 S. Ct. at 1782. When such individuals "sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court." Id. (citations omitted).

At issue is the legal status of the Trust. Under the law of the forum the term "trust," in its standard use, refers neither to a distinct legal entity nor to an unincorporated association but to "the *fiduciary relationship* governing the trustee with respect to the trust property." Huie v. DeShazo, 922 S.W.2d 920, 926 (Tex. 1996). "The general rule in Texas (and elsewhere) has long been

that suits against a trust must be brought against its legal representative, the trustee." Ray Malooly Trust v. Juhl, 186 S.W.3d 568, 570 (Tex. 2006) (citations omitted). Since a trust is a non-entity, "for relief to be granted against a trust, the trust—through its trustee—must be made a party to the action." In re Ashton, 266 S.W.3d 602, 604 (Tex. App.--Dallas 2008, no pet.) (emphasis added). "A trust may be created for any purpose that is not illegal." Tex. Prop. Code Ann. § 112.031. Trustees typically hold legal title for the benefit of beneficiaries, manage the assets of the trust, and control litigation regarding those assets. See Navarro, 100 S. Ct. at 1784.

As the United States Supreme Court has recently noted, however, merely invoking the term does not a trust make. Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016) ("Many States . . . have applied the 'trust' label to a variety of unincorporated entities that have little in common with this traditional template."). Likewise, Texas law acknowledges the existence of certain legal entities styled as "trusts." See, e.g., Tex. Prop. Code Ann. § 111.003(3) (excluding "business trust[s]" from the statutes applicable to traditional trusts); Tex. Bus. Orgs. Code Ann. § 200.001 et seq. (governing real estate investment trusts). These "business trusts," also termed "Massachusetts Trusts" or "common-law trusts," Black's Law Dictionary 1514 (7th ed. 1999), are treated under Texas law as unincorporated

associations. Loomis Land & Cattle Co. v. Diversified Mortgage Investors, 533 S.W.2d 420, 426 (Tex. Civ. App. -- Tyler 1976, writ ref'd n.r.e.) ("While Massachusetts Business Trusts are not recognized in this state it has been held that they are to be treated as a partnership or an unincorporated joint stock company."). Such entities have standing in their own right. Id.

Whether or not a so-called "trust" is a fiduciary relationship or a legal entity is determined by the laws under which it is formed. See Americold, 136 S. Ct. at 1016. In the Americold case a real estate investment trust ("REIT") was sued in its own name. Id. at 1014. The REIT was organized under Maryland law. Id. at 1015. The Court found that Maryland law treats a REIT as an "unincorporated business trust or association." Id. at 1016. As a result, it held that the REIT took the citizenship of its members, the shareholders. Id. Following the Americold decision, when a trust is sued in its own name courts must determine whether the named party is a traditional trust or merely a nominal "trust," since "[f]or a traditional trust, . . . there is no need to determine its membership, as would be true if [a] trust, as an entity, were sued." Id.

   2.  Application

The dispositive issue is whether the Trust is a real party to the controversy or only a nominal party to be disregarded for jurisdictional purposes. In order to decide the issue, the court

must determine whether the Trust is a fiduciary relationship between the Trustee and the beneficiaries (in this case certificateholders) or an unincorporated association only nominally operating as a "trust." The former cannot be sued directly under Texas law, while the latter has standing. Also, the former takes the citizenship of its trustee, while the latter takes the citizenship of its members.[12] In the latter case, the burden would fall upon the Trustee or other representative of the Trust to show that removal was proper by establishing by a preponderance of the evidence that the members were diverse at the time of removal.

Plaintiffs contend that the Trust is a proper party to the action because it is, in fact, a "business trust" disguised as a traditional trust.[13] Plaintiffs cite New York statutes referring to an "association operating a business" divided into shares represented by certificates.[14] They suggest that the determination is simply a matter of applying these statutory definitions. New York case law, however, acknowledges the difficulty of determining what sort of entity or relationship is created by a trust agreement. Brown v. Bedell, 263 N.Y. 177, 187, 188 N.E. 641, 644 (1934) ("Although the test is plain, the difference is not always

---

[12]In this case, the members would be the nominal "beneficiaries" or certificateholders.

[13]Plaintiffs' Motion to Remand, Docket Entry No. 22, ¶¶ 15-19.

[14]Id. ¶ 16.

entirely clear . . ."). Whether a trust agreement creates a distinct legal entity "depends upon the way in which the trustees are to conduct the affairs committed to their charge." Id. at 187. If the relationship between the beneficiary and the trustee is one of principal to agent, the agreement may reflect an unincorporated association. If instead the trustee acts independently as a principal for the benefit of the beneficiary, a fiduciary relationship is created. Neither conducting business nor the existence of transferable shares is dispositive. Id.

Whether the Trust is a legal entity is determined by the actual structure of the agreement under which it was formed. Defendants have provided the court with the Pooling and Service Agreement ("PSA") for the Trust, which sets out the relationship between the Trustee and the certificateholders.[15] As defendants note, upon execution and delivery of the PSA, "all the right, title and interest" of the Trust assets is to be transferred to the Trustee.[16] Actions taken on behalf of the Trust are "authorized and empowered" by the Trustee rather than the certificateholders.[17] In contrast, the certificateholders have very limited powers. They may not initiate an action without first notifying the Trustee and

---

[15]Exhibit B to Deutsche Bank's Response to Plaintiffs' Motion to Remand, Docket Entry No. 31-2.

[16]Id. at 38 § 2.01(a).

[17]Id. at 46 § 3.01.

providing the Trustee with an opportunity to do so.[18] The only substantive power the certificateholders have over the Trustee is the power of removal.[19] While that power is not insignificant, it falls short of the authority to direct the Trustee's actions.

Plaintiffs counter by pointing out that the Trust differs from a traditional donative trust in its purpose and argue that the Trust is functionally a type of REIT.[20] It is not necessary for the court to consider the variety of traditional trusts or to delve into the nature of REITs. There is no evidence that the Trust was organized as a REIT. A traditional trust may be created for any lawful purpose. The Trustee holds legal title and with it the power to hold, manage, and dispose of Trust assets. Whatever business is conducted on behalf of the Trust is conducted by or on the authority of the Trustee.

Finally, citing Juarez v. DHI Mortgage Co., Ltd, Civil Action H-15-3534, 2016 WL 3906296 (S.D. Tex. July 19, 2016), plaintiffs contend that the above analysis is unnecessary.[21] The court in Juarez remanded a case in which a trust was a named defendant. The court noted that because the defendants in that case had not even attempted to classify the trust or identify any of its members, the

---

[18]See id. at 98 § 10.08.

[19]See id. at 87 § 8.07.

[20]Plaintiffs' Reply in Support of Plaintiffs' Motion to Remand ("Reply"), Docket Entry No. 33, pp. 2-6 ¶¶ 3-12.

[21]Id. at 6-7 ¶¶ 13-14.

court did not need to determine whether the trust was an unincorporated entity under New York law. Id. at *3. Plaintiffs cite Juarez for the proposition that the correct test under Americold is merely to determine who is the named party, the trust or the trustee.[22] If that were the case, neither the Court in Americold nor the court in Juarez would have addressed the issue of classifying the trust. Both decisions discuss the significance of classifying a "trust" as either a traditional trust or a business trust. If it were enough to simply name the trust, that step would be superfluous. Rather, as the court in Juarez recognized, the removing party bears the burden of classifying the trust by a preponderance of the evidence. Id. Unlike the defendants in Juarez, the Trustee here has done so, and the court finds that the Trust is a traditional trust. The real party in interest is therefore the Trustee, not the Trust. The court will thus disregard the citizenship of the Trust since it is only a nominal party to the action.

### III. Conclusions and Order

For the reasons explained above, the court concludes that Deutsche Bank has shown by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, and that the Mays have failed to demonstrate to a legal certainty that the

---

[22]Id. at 6 ¶ 13 ("The analysis in Americold is not a 'real party in interest' test, but a 'who is sued' test.").

amount in controversy is below the jurisdictional amount. The court also concludes that all proper parties to the action have been shown to be diverse. Accordingly, Plaintiffs' Motion to Remand (Docket Entry No. 22) is **DENIED**.

**SIGNED** at Houston, Texas, on this 16th day of September, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE